UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIO J. REYES,

Plaintiff,

-v-

UNDERCUT BARBER SHOP INC., *et al.*,

Defendants.

24 Civ. 2243 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

Plaintiff Mario J. Reyes asserts that Defendants Undercut Barber Shop Inc. ("Undercut"), 1000 Volts Tattoo Co. ("1000 Volts"), and 288 Mulberry Street Realty Corp. ("288 Mulberry") discriminated against him on the basis of his disability, thus violating the Americans with Disabilities Act (the "ADA"), the New York City Human Rights Law (the "NYCHRL"), the New York State Human Rights Law (the "NYSHRL"), and the Administrative Code of New York City. Defendants move for summary judgment, arguing, among other things, that the Court lacks subject-matter jurisdiction over Plaintiff's ADA claims. For the reasons below, the Court agrees with Defendants that subject-matter jurisdiction over Plaintiff's ADA claims is lacking and, without jurisdiction over Plaintiff's federal claims, the Court cannot exercise supplemental jurisdiction over his state-law and city-law claims. The Court therefore dismisses all of Plaintiff's claims without prejudice.

## I. Background

### A. Facts[1]

288 Mulberry owns a four-story building located just south of the intersection of Houston and Mulberry Streets in lower Manhattan. Undercut-Mulberry 56.1 Stmt. ¶ 14; Goodman Decl. ¶¶ 1-2. That building includes a "below street-level commercial premises," which 288 Mulberry leases out. Undercut-Mulberry 56.1 Stmt. ¶¶ 3-5, 8, 14; Goodman Decl. ¶¶ 2, 9-10. In September 2023, this space was home to 1000 Volts, a "Tattoo and Piercing Studio" run by Lucas Quinonez. Undercut-Mulberry 56.1 Stmt. ¶ 5 (internal quotation marks omitted).[2]

---

[1] The Court derives these facts from Defendants' statements filed under Local Civil Rule 56.1, *see* Dkts. 93-1 ("Undercut-Mulberry 56.1 Stmt."), 97 at 4-5 ("1000 Volts 56.1 Stmt."), and the sworn statements and exhibits filed by the parties, *see* Dkts. 93-2 ("Goodman Decl."), 93-3 ("1000 Volts Lease"), 93-4 ("Undercut Lease"), 93-5 ("Undercut Incorporation Records"), 97 at 8-9 ("Quinonez Aff."), 103-2 ("Reyes Decl."). Because Plaintiff has not responded to Defendants' Rule 56.1 statements, the Court may "conclude that the facts asserted [in them] are uncontested and admissible." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("In the typical case, [a party's] failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met."). Despite Plaintiff's failure to file his own Rule 56.1 statement, the Court considers Plaintiff's declaration supporting his opposition papers, Dkt. 103-2, and only those portions of Defendants' Rule 56.1 statements for which there is evidentiary support in the record.

[2] Quinonez, who is proceeding *pro se*, is the sole proprietor of 1000 Volts and has made filings, including in support of summary judgment, on behalf of 1000 Volts. *See* Dkts. 22, 47, 55, 71, 88, 96, 97, 104. And while Quinonez is not personally named as a party, his papers refer to him and his business interchangeably. *See, e.g.*, Dkts. 97, 104. Although "it is well-settled law that a corporation may appear in the federal courts only through licensed counsel," *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 187 (2d Cir. 2006), numerous courts in this Circuit have held that a sole proprietorship may proceed *pro se*, *see e.g.*, *Maersk Line A/S v. Carew*, No. 19 Civ. 4870 (JPC), 2021 WL 431242, at *1 n.1 (S.D.N.Y. Feb. 8, 2021); *Cassidy v. Madoff*, No. 18 Civ. 394 (BKS) (DJS), 2019 WL 3453937, at *1 n.1 (N.D.N.Y. July 31, 2019); *Oberstein v. SunPower Corp.*, No. 07 Civ. 1155 (JFB), 2008 WL 630073, at *3 (E.D.N.Y. Mar. 5, 2008) (collecting cases). The Second Circuit has not yet addressed this specific issue. *See Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("[S]ome courts allow sole proprietorships to proceed *pro se* [because] a sole proprietorship has no legal existence apart from its owner."). Because a sole proprietorship and its owner are the same legal entity, the Court allows Quinonez to represent 1000 Volts in this case.

On September 16, 2023, Plaintiff—who relies on a wheelchair—attempted to visit 1000 Volts but was unable to access the tattoo studio's below-ground premises. Reyes Decl. ¶ 5. Roughly six months later, in March 2024, 1000 Volts went out of business and "permanently vacated [the leased premises], never to return." Undercut-Mulberry 56.1 Stmt. ¶¶ 6-7; *accord* 1000 Volts 56.1 Stmt. ¶ 1 ("Defendant 1000 Volts Tattoo Co. permanently ceased all business operations at 288 Mulberry Street, New York, NY on March 5, 2024." (citation omitted)); Quinonez Aff. at 1 ("On or about March 5, 2024, I permanently closed the business known as 1000 Volts Tattoo Co."); Goodman Decl. ¶ 6 ("Unfortunately, Mr. Quinonez could not pay his rent and closed his business and permanently vacated the premises, at the beginning of March 2024 . . . ."); *see* 1000 Volts 56.1 Stmt. ¶ 6 ("[1000 Volts] no longer occupies or has control over the premises at 288 Mulberry Street, New York, NY . . . ."); Quinonez Aff. at 2 (describing 1000 Volts as "permanently closed"); 1000 Volts Lease (five-year lease for 1000 Volts at 288 Mulberry Street commencing on April 1, 2019). After only a few months, however, 288 Mulberry succeeded in leasing the space out to a new tenant: on May 6, 2024, it rented the premises to Undercut, a barbershop that was first incorporated on the same day that it signed the lease. Undercut-Mulberry 56.1 Stmt. ¶¶ 8-9; Goodman Decl. ¶¶ 7-8; Undercut Lease (five-year lease for Undercut at 288 Mulberry Street effective May 6, 2024); Undercut Incorporation Records. While customers still must walk down a flight of stairs to access Undercut, the barbershop displays a sign and a buzzer instructing disabled patrons to "ring bell for assistance." Undercut-Mulberry 56.1 Stmt. ¶¶ 10-11; Goodman Decl. ¶¶ 9-11.

Plaintiff lives part-time at a residence roughly seven-tenths of a mile away from Undercut, and he asserts that he "frequently pass[es] by that area," but still cannot access the below-street-level space. Reyes Decl. ¶¶ 4-6. Plaintiff claims that he has "attempted to visit" 1000 Volts and

Undercut in the past but was denied full access to steps at the entrance, *id.* ¶ 2, and that he hopes to "return to [Undercut] to get a haircut," since he "really would like to go to this professional five star unusually highly rated nearby barber shop," *id.* ¶ 7.

**B. Procedural History**

On March 26, 2024 (several months before Undercut was incorporated), Plaintiff filed his Complaint against 1000 Volts and 288 Mulberry. Dkt. 1. On October 8, 2024, Plaintiff amended that Complaint, adding Undercut as a Defendant. Dkt. 29 ("Am. Compl."). The Amended Complaint asserts four claims against all three Defendants. In Count One, Plaintiff alleges that Defendants violated the ADA, 42 U.S.C. §§ 12101-89, by discriminating against him because of his disability. Am. Compl. ¶ 13. Specifically, Plaintiff asserts that Defendants "den[ied him] full and equal access" to their facilities and failed to mitigate certain "architectural barriers"—such as the lack of an "accessible entrance" or "sufficient floor space" to maneuver a wheelchair in the restroom. *Id.* ¶¶ 13-16. Based on the same facts, Plaintiff asserts in Counts Two and Three that Defendants contravened the NYCHRL's and the NYSHRL's anti-disability-discrimination rules, N.Y.C. Admin. Code § 8-107(4)(a); N.Y. Exec. Law § 296(2)(a), while in Count Four he similarly alleges that Defendants violated analogous provisions in the New York City Administrative Code, N.Y.C. Admin. Code §§ 8-107(4), 8-130. Am. Compl. ¶¶ 21-37. Plaintiff seeks injunctive relief and attorneys' fees under the ADA, compensatory and punitive damages and attorneys' fees under the New York State and New York City laws, and declaratory relief as to all four Counts. *Id.* ¶¶ 38-41; *see id.* at 13.

On September 16, 2025, 1000 Volts moved to dismiss the Amended Complaint. Dkt. 91. On September 18, 2025, following a conference with the parties, the Court denied that motion without prejudice and set a briefing schedule for summary judgment motions—in which 1000

Volts would be free to make the same arguments as it had advanced in its motion to dismiss. Dkt. 92. On September 21, 2025, 288 Mulberry and Undercut moved for summary judgment, Dkts. 93-94, 98, and on September 22, 2025, 1000 Volts filed its own motion, Dkt. 97.[3] On November 24, 2025, Plaintiff opposed both motions, Dkt. 103 ("SJ Opposition"). 1000 Volts filed its reply on September 24, 2026, Dkt. 104, and 288 Mulberry and Undercut filed their reply on September 26, 2026, Dkt. 106.

## II. Legal Standard

"[T]he first and fundamental question" in every case "is that of jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Because Article III of the Constitution extends the "judicial power of the United States" only to concrete "Cases" and "Controversies," courts must begin by determining whether the parties have an "actual" dispute. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (first quoting U.S. Const. art. III, § 2; then quoting *Raines v. Byrd,* 521 U.S. 811, 818 (1997)). And no such dispute exists when a party lacks standing to assert a claim, or when that claim is moot. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (explaining that "[t]he Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins both [the Supreme Court's] standing and . . . mootness jurisprudence").

These related doctrines of standing and mootness have, however, "important difference[s]." *Id.* at 192. When asserting that a case is moot, the defendant must bear the "formidable burden of showing that . . . the allegedly wrongful behavior could not reasonably be

[3] While 1000 Volts did not style this submission—which combines a memorandum of law, a Rule 56.1 statement, and a supporting affidavit with exhibits, Dkt. 97—as a "motion," courts "liberally construe[]" the filings of *pro se* litigants, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), and Plaintiff has treated 1000 Volts's papers as a motion for summary judgment, *see* Dkt. 103 at 1. The Court therefore does the same.

expected to recur." *Id.* at 190. "By contrast, . . . it is the *plaintiff's* burden to establish standing," *id.* at 190 (emphasis added), "[a]t each . . . stage" of the litigation, *Lugo v. City of Troy, New York*, 114 F.4th 80, 87 (2d Cir. 2024) (internal quotation marks omitted). Furthermore, the "manner and degree of evidence" that a plaintiff must present will shift depending on which of the "successive stages" the action has reached—*i.e.*, pleading, summary judgment, or trial. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

At summary judgment, a plaintiff may "defeat a defendant's motion" only by "produc[ing] evidence showing the *presence* of a genuine issue regarding standing that would warrant resolution by trial." *Lugo*, 114 F.4th at 87-88; *see also* Fed. R. Civ. P. 56(a). In other words, a plaintiff can no longer rest on the "mere allegations" that sufficed at the pleading stage, and he must instead present solid proofs of his standing. *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). This "hard evidence" must go beyond "unsubstantiated speculation," and a vague affidavit will thus not suffice. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). Rather, a plaintiff's declaration must provide "concrete particulars" showing why his claims survive summary judgment. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451 (2d Cir. 1999) (internal quotation marks omitted).

## III. Discussion

The Court concludes that it lacks subject-matter jurisdiction over Plaintiff's ADA claims. While Plaintiff's ADA claim against 1000 Volts falls short because it is moot, his ADA claims against 288 Mulberry and Undercut fail for lack of standing. And with these federal claims rejected on jurisdictional grounds, the Court "cannot exercise supplemental jurisdiction" over Plaintiff's state-law and city-law claims. *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017).

### A. Plaintiff's ADA Claims Against 1000 Volts and 288 Mulberry (as Landlord for 1000 Volts) Are Moot.

A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). And issues are no longer live "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). For this reason, a plaintiff's request for injunctive relief may become moot if it is "impossible for the court" to provide that remedy because "the challenged conduct [has] cease[d] such that there is no reasonable expectation that the wrong will be repeated." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (brackets and internal quotation marks omitted).

Under the provisions of the ADA at issue here, "[a] private individual" "cannot recover damages," and instead "may only obtain injunctive relief." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004). Plaintiff's ADA claims against 1000 Volts and 288 Mulberry, in its capacity as the owner of the property during 1000 Volts's tenancy, are thus moot if 1000 Volts is no longer (allegedly) discriminating against him and "could not reasonably be expected" to do so again. *Friends of the Earth*, 528 U.S. at 189 (internal quotation marks omitted).

Here, it is "absolutely clear," *id.* (internal quotation marks omitted), that 1000 Volts is not injuring Plaintiff—and will not harm him in the future—because 1000 Volts no longer exists. Indeed, courts in this District have routinely dismissed ADA claims as moot where the defendant closed its business and gave up the premises before or during the litigation. *See, e.g.*, *Vuppala v. Wonderland Convenience Corp.*, No. 22 Civ. 9044 (JGLC), 2024 WL 4557457, at *2 (S.D.N.Y. Oct. 22, 2024) ("When the basis of an ADA claim is the physical inaccessibility of a property, and a defendant no longer occupies or controls that property, a court loses the ability to order injunctive

relief from the defendant . . . and the ADA claim becomes moot." (internal quotation marks and brackets omitted)); *Dunbar v. Empire Szechuan Noodle House Inc.*, No. 18 Civ. 9625 (CM), 2020 WL 2132339, at *3-5 (S.D.N.Y. May 5, 2020) ("Where, as here, [injunctive relief] is no longer possible, the ADA claim becomes moot, depriving the court of subject matter jurisdiction"). "Put simply, the Court cannot enjoin what no longer exists." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393 (2d Cir. 2022).

Faced with this simple line of reasoning, Plaintiff advances two unconvincing arguments. First, Plaintiff contends that "voluntary cessation of challenged conduct does not ordinarily render a case moot." SJ Opposition at 7 (quoting *Knox,* 567 U.S. at 307). But the voluntary-cessation doctrine kicks in only if the defendant is "free to return to [its] old ways" as soon as the action against it is dismissed, meaning that "the allegedly wrongful behavior [could] reasonably be expected to recur." *Already*, 568 U.S. at 92 (internal quotation marks omitted). The record here indisputably shows that 1000 Volts has definitively shuttered its windows and, in fact, has been out of operation since March 2024. Undercut-Mulberry 56.1 Stmt. ¶¶ 6, 7; 1000 Volts 56.1 Stmt. ¶¶ 1, 6; Quinonez Aff. at 1-2; Goodman Decl. ¶ 6; *see* 1000 Volts Lease. Plaintiff makes no argument as to why the Court might "reasonably," *Already*, 568 U.S. at 92, assume that the now-defunct 1000 Volts will in fact return to 288 Mulberry Street, replace the current tenant (Undercut), and resume its prior business.

Second, Plaintiff insists that (i) 1000 Volts's now-terminated lease included a clause requiring it to indemnify its landlord, *i.e.*, 288 Mulberry; and (ii) 288 Mulberry still exists. SJ Opposition 6-7. But this argument is a non-starter. For one thing, the boilerplate indemnification clause, *see* 1000 Volts Lease at 2, does not somehow empower 1000 Volts to remediate architectural barriers at a property in which it no longer holds any interest. For another, Plaintiff's

argument rests on the mistaken theory that he may draw 1000 Volts back into the case by securing relief against 288 Mulberry. But, as discussed below, Plaintiff lacks standing to sue 288 Mulberry in its capacity as the landlord for Undercut.

### B. Plaintiff Lacks Standing to Assert His ADA Claims Against Undercut and 288 Mulberry (as Landlord for Undercut).

"[T]o establish standing" with respect to a particular claim, a plaintiff must first demonstrate "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see id.* at 431 (explaining that a plaintiff must have standing "for each claim that [he] press[es] and for each form of relief that [he] seek[s]"). When a plaintiff requests injunctive relief, he therefore must show that he faces a threat of *future* injury that is "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted).

Applying this test to ADA claims, the Second Circuit has concluded that a plaintiff has standing only if the court can reasonably infer—"based on the past frequency of plaintiff's visits and the proximity of defendants' [business] to plaintiff's home"—"that plaintiff intend[s] to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). And because this factor is "focus[ed]" on whether "'the risk of harm is sufficiently imminent and substantial' to establish standing," a plaintiff may not simply assert that he "intends to return" at some unidentified point. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74-75 (2d Cir. 2022) (internal quotation marks omitted) (quoting *TransUnion*, 594 U.S. at 435). After all, such "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury" that standing demands. *Lujan*, 504 U.S. at 564; *see Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (same for ADA case).

Here, Plaintiff has presented merely such "some day intentions." Indeed, the *only* evidence potentially going to standing that Plaintiff has submitted is his two-page declaration. *See* Reyes Decl.[4] But Plaintiff's Declaration scarcely provides the "hard evidence," *Jeffreys*, 426 F.3d at 554 (internal quotation marks omitted), or "concrete particulars," *Bickerstaff*, 196 F.3d at 451, of an intent to return needed to survive summary judgment. Rather, Plaintiff vaguely states in his Declaration that (i) he lives part-time roughly seven-tenths of a mile from 288 Mulberry Street, Reyes Decl. ¶¶ 3-4; (ii) he "frequently pass[es] by that area approximately every week," *id.* ¶ 4; (iii) he previously visited 1000 Volts (a different business providing an entirely difference service) on September 16, 2023, *id.* ¶ 5; (iv) he has "attempted to visit" both Undercut and 1000 Volts (at some additional unmentioned dates and times) but "was denied full and equal access due to the numerous inaccessible steps at the entrance," *id.* ¶ 2; and (iv) he "really would like to go to" to Undercut for a haircut because it has a high rating on the internet, *id.* ¶ 7. But an ADA plaintiff cannot get past summary judgment simply by asserting that he lives relatively close to a business, has visited it at some unspecified and unverifiable point, and would like to go to the business at some future (also unidentified) time. *See Calcano*, 36 F.4th at 68 (finding a lack of standing, even at the motion-to-dismiss stage, when the plaintiff had alleged that "he reside[d] 'in close proximity to' Defendants' businesses, ha[d] been a 'customer at Defendant's location on prior occasions,' and 'intend[ed] to immediately purchase'" an item from store (brackets omitted)).

[4] Plaintiff also filed a report, which has no bearing on standing, by an architectural consultant who inspected the building in 2025. Dkt. 103-1. But even were this report somehow relevant to the threshold jurisdictional question, as mentioned, *see supra* n.1, Plaintiff did not bother to submit a Rule 56.1 counterstatement in response to Defendants' Rule 56.1 statements—an omission that would alone doom his claim given the evidence presented by Defendants. *See T.Y.*, 584 F.3d at 418 ("In the typical case, [a party's] failure to respond [to a Rule 56.1 statement] results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met.").

Unable to overcome this hurdle, Plaintiff instead misstates the standard. Plaintiff contends that the allegations in his Amended Complaint "must be accepted as true," and that his Amended Complaint need merely satisfy "the minimum pleading requirements" of the Federal Rules of Civil Procedure by "plausibly suggesting" a violation of law. SJ Opposition at 2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But Plaintiff articulates the standard that governs at the *motion-to-dismiss* stage—not at summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)). Plaintiff's assertion that he "adequately pled" standing in his "Amended Complaint" thus has no bearing on Defendants' current, post-discovery motion for summary judgment. SJ Opposition at 9 (citing motion-to-dismiss caselaw); *see Lujan*, 504 U.S. at 561 (explaining that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," but that "[i]n response to a summary judgment motion . . . the plaintiff can no longer rest on such mere allegations, [and] must set forth by affidavit or other evidence specific facts" (internal quotation marks omitted)).

In sum, Plaintiff has failed to bear his burden of showing that there is a genuine issue of material fact as to whether he has standing. Indeed, under Plaintiff's theory, any ADA plaintiff would have standing—even at summary judgment—to sue every highly rated business within twenty blocks of him by professing an interest in visiting it. Because the Court will not endorse such a precedent-defying, carpet-bomb theory of standing, it dismisses Plaintiff's ADA claims against Undercut and 288 Mulberry.

**C. The Court Cannot Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claims.**

Finally, the Court dismisses Plaintiff's non-federal claims in Counts Two, Three, and Four. Plaintiff asserts only supplemental jurisdiction as the basis for these state-law and city-law claims. *See* Am. Compl. ¶¶ 1, 21-37; SJ Opposition at 7. But "a district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction," and "when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction . . . , the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims." *Cohen*, 873 F.3d at 399 (internal quotation marks omitted); *see* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts *have original jurisdiction*, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (emphasis added)). Because the Court has dismissed all the federal claims in this case for lack of subject-matter jurisdiction, it is thus "precluded," *Cohen*, 873 F.3d at 399, from exercising supplemental jurisdiction here, and it must dismiss all of Plaintiff's non-federal claims as well.

## IV. Conclusion

For these reasons, the Court lacks subject-matter jurisdiction over Plaintiff's federal claims in Count One and over his state-law and city-law claims in Counts Two, Three, and Four. The Court therefore dismisses all of Plaintiff's claims without prejudice. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (explaining that "dismissal[s] . . . for lack of subject matter jurisdiction" "must be without prejudice, rather than with prejudice").

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: September 23, 2026
New York, New York

JOHN P. CRONAN
United States District Judge